# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNON 351 | Hon. Faith S. Hochberg, U.S.D.J. |
|  | Civil Case No. 13-3712 (FSH) |
| Plaintiff, |  |
|  | **OPINION & ORDER** |
| v. |  |
|  | Date: October 21, 2013 |
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 825 |  |
|  |  |
| Defendant. |  |

**HOCHBERG, District Judge**:

This matter comes before the Court upon Defendant's motion to dismiss Plaintiff's Amended Complaint [Dkt. No. 10] and Plaintiff's cross motion for a preliminary injunction [Dkt. No. 18]. The Court has reviewed the submissions of the parties and considers the motions on the papers pursuant to Federal Rule of Civil Procedure 78.

### I.    BACKGROUND[1]

This matter involves a conflict between two unions, the International Brotherhood of Electrical Workers Local Union 351 ("IBEW 351") and the International Union of Operating Engineers Local 825 ("IUOE 825"). The dispute revolves around whether or not IBEW 351 was bound to arbitrate disputes related to the construction of the West Deptford Energy Station, a 700 megawatt natural gas plant in West Deptford, New Jersey. The underlying dispute involves which union has "jurisdiction" over certain work to be completed on the construction site.

---

[1] The following alleged facts have been taken from the Amended Complaint [Dkt. No. 6].

On May 4, 2012,[2] the United Building Trades Council of Southern New Jersey, AFL-CIO ("the Council") and LB Constructors,[3] signed a Project Labor Agreement ("PLA") for the construction of the West Deptford Energy Station. This PLA purports to govern the terms and conditions of employment at the work site. Almost a year later, on February 14, 2013, IBEW 351 sent a letter to the Council purporting to withdraw from the PLA. In April 2013, Matrix SME, a subcontractor of LB Constructors, awarded a work contract to IBEW 351. On April 25, 2013, IUOE 825 sent a letter to the project manager, Matrix SME, and IBEW 351 disputing the assignment of the work contract to IBEW 351. IUOE 825 requested arbitration to resolve the dispute.

On May 23, 2013, Arbitrator J.J. Pierson ("the Arbitrator") assigned a hearing for May 30, 2013. On May 29, 2013, IBEW 351 sent correspondence to the Arbitrator stating it was not bound by the terms of the PLA and objecting to the short notice of hearing. On May 30, 2013, the Arbitrator held a hearing. IBEW 351 and Matrix SME did not participate. Following the hearing, the Arbitrator awarded judgment in IUOE 825's favor, finding that the dispute was arbitrable and assigned the work to IUOE 825. The Arbitrator issued a Final Opinion and Award on June 19, 2013.

IBEW 351 filed a Complaint in this Court on June 14, 2013 [Dkt. No. 1], and it filed an Amended Complaint on June 24, 2013 [Dkt. No. 6]. The Amended Complaint alleges that the award should be vacated because IBEW 351 never signed the PLA and seeks an injunction preventing IUOE 825 from enforcing the arbitration award.

---

[2] This date is taken from a document relied on in the Amended Complaint [Dkt. No. 11-2].

[3] LB Constructors is the construction company building the West Deptford plant.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly* relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted) (emphasis in original). Here, the Court considers and relies upon the Amended Complaint, the materials attached to the Amended Complaint,[4] IBEW 351's letter dated February 14, 2013 purporting to withdraw from the PLA, and the signature page of the PLA.

III. DISCUSSION

IUOE 825 moves to dismiss IBEW 351's complaint. IUOE 825 argues that the Council signed the PLA and in so doing, also bound IBEW 351 to arbitration. In response, IBEW 351 makes two arguments. First, it argues that the PLA required IBEW 351 to sign individually in order to be bound by its terms. Second, IBEW 351 argues that if it was ever bound by the PLA, it successfully withdrew from the PLA prior to the dispute. The resolution of this matter turns on whether the PLA binds IBEW 351 to arbitration.[5]

In order to determine whether the PLA binds IBEW 351 to arbitration, the Court must interpret the PLA.[6] "[A]n unambiguous agreement should be enforced according to its terms."

---

[4] These documents include, *inter alia*, the PLA and the Arbitrator's Final Opinion and Award.

[5] Although IBEW 351 raises new allegations in its opposition, these are not properly considered on a motion to dismiss. *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007). In any event, the Arbitrator's schedule was not unreasonable, especially in light of the enormous discretion granted to arbitrators. "[T]he United States Supreme Court has consistently held that courts exercise a narrow and deferential role in reviewing arbitration awards arising out of labor disputes." *Pennsylvania Power Co. v. Local Union No. 272, Intern. Broth. of Elec. Workers, AFL-CIO*, 276 F.3d 174, 178 (3d Cir. 2001); *see also Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969) ("[W]e must conclude that such a philosophy of restricted review compels even less judicial interference in matters arising from labor arbitration."). Notably, IUOE 825 was able to prepare and attend the arbitration, and the Arbitrator wanted to adhere to the time limits of the PLA. Similarly, there is no question that the Arbitrator had the authority to resolve the jurisdictional dispute between IBEW 351 and IUOE 825 under the PLA. (*See* Dkt. No. 6-1, PLA at Article 10 ("Jurisdictional Disputes").)

[6] This threshold question of the existence of an arbitration clause is one that the Court may address. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857-58 (2010) ("[O]ur precedents hold that courts should order arbitration of a dispute only where the court is

*McDowell v. Phila. Housing Auth.*, 423 F.3d 233, 238 (3d Cir. 2005). "Whether an agreement is ambiguous is a question of law for the court to decide after considering whether, from an objective standpoint, the agreement is reasonably susceptible to at least two different interpretations." *Calvitti v. Anthony & Sylvan Pools Corp.*, 351 F. App'x 651, 654-55 (3d Cir. 2009). "In making that determination, the court should consider the language of the agreement, the interpretations suggested by the parties, and the extrinsic evidence offered in support of each interpretation." *Id.* (citing *Einhorn v. Fleming Foods of Pa., Inc.*, 258 F.3d 192, 194-95 (3d Cir. 2001)). Although extrinsic evidence may be used to determine whether a contract is ambiguous, "in no event may extrinsic evidence be employed to contradict explicit contract language or to drain an agreement's text of all content save ink and paper." *Calvitti*, 351 F. App'x at 655 (quoting *Smart v. Gillette Co. Long Term Disability Plan*, 70 F.3d 173, 180 (1st Cir. 1995)).

The PLA contains the following relevant provisions:

ARTICLE 1
PARTIES

SECTION 1.1 - PARTIES TO THE AGREEMENT

This is a Project Labor Agreement (Agreement) entered into by and between the Project Contractor, and on behalf of its contractors, subcontractors, and sub-tier subcontractors, the United Building Trades Council of Southern New Jersey, AFL-CIO, on behalf of itself and its affiliates, and the signatory local unions, listed in Exhibit A, on behalf of themselves and their members.

---

satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue. Where a party contests either or both matters, 'the court' must resolve the disagreement." (internal citations omitted, emphasis in original)). Such matters are appropriately addressed on a motion to dismiss under these circumstances. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-74, 776 (3d Cir. 2013) ("[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." (internal citations and quotation marks omitted)).

5

ARTICLE 2
GENERAL CONDITIONS

SECTION 2.1 - DEFINITIONS
The term Local Unions shall mean those labor unions that are party to this agreement as indicated by the signatures for each respective Local Union listed in Exhibit A;

\*           \*           \*

SECTION 2.2 - CONDITIONS FOR AGREEMENT TO BECOME EFFECTIVE AND ITS TERMS
The Agreement shall not become effective unless executed by the [Council], the Local Unions, and Project Contractor. The Agreement will remain in effect until the completion of the Project as set forth in Article 3.1.

SECTION 2.3 - ENTITIES BOUND AND ADMINISTRATION OF AGREEMENT
This Agreement shall be binding on the Unions, the Project Contractor and all signatory Contractors performing on-site Project work, including site preparation and staging area work, as defined in Article 3. The Contractor shall include in any subcontract that they let, for performance during the term of this Agreement, a requirement that their subcontractors, of whatever tier, become signatory and bound by this Agreement with respect to subcontracted work performed with the scope of Article 3. The BTC warrants that it is authorized to execute this Agreement on behalf of all the Unions noted in Exhibit A.

(Dkt. No. 6-1.)

IBEW 351 argues that these provisions require that the local unions sign Exhibit A to be bound by the PLA. In response, IUOE 825 argues that the PLA contemplates allowing the Council to sign thereby binding itself and its affiliates without any additional signatures from the local unions.[7]

The Court finds that the PLA is clear on its face. The Council could bind itself and its affiliates to the PLA without the submission of individual signatures for each of the affiliates. (*E.g.*, Dkt. No. 6-1 at Section 1.1 ("This is a Project Labor Agreement (Agreement) entered into

---

[7] IUOE 825 also argues that any references to local unions being required to sign Exhibit A would be a scrivener's error. Looking at the PLA as a whole, including the signature page, it is clear that the contract contemplated having the Council bind its own affiliates even absent signatures on Exhibit A. Thus, there is no need to address IUOE 825's scrivener's error argument.

by and between the Project Contractor . . . [the Council], *on behalf of itself and its affiliates*" (emphasis added)).) Similarly, the Section 2.3 defines the parties who are bound by the PLA—those include "the Unions." (*Id*. at Section 2.3.) The PLA defines "Unions" to include Local Unions and the Council. (*Id*. at Section 2.1.) Finally, the signature page of the PLA only includes space for the Council and the Project Contractor further confirming that the agreement contemplates allowing the Council to bind itself and its affiliates without the need for additional signatures.[8] (*Id*. at 32 ("Duration of Agreement and Signatures"); *see also* Dkt. No. 11-2, Exhibit 2 (the PLA signature page showing that the Council and the project contractor signed the PLA).)

IBEW 351 admits that it is a member of the Council (Gant Decl. ¶ 4), and it is clear that the Council may bind its members under the PLA. The ability of trade councils to bind their members has long been upheld and is not uncommon. *See*, *e.g.*, *Int'l Union of Operating Engineers, Local 653 v. Bay City Erection Co.*, 300 F.2d 270, 272 (5th Cir. 1962); *Blake Const. Co., Inc. v. Laborers' Int'l Union of N. Am., AFL-CIO*, 511 F.2d 324, 329 (D.C. Cir. 1975) (finding language similar to that in the PLA bound local affiliates in addition to the international union signatory); *United Steelworkers of Am., AFL-CIO-CLC v. Bldg. & Const. Trades Dep't of Am. Fed'n of Labor-Cong. of Indust. Organizations*, Civ. No. 95-6737, 1996 WL 596125, at *5-*6 (E.D. Pa. Oct. 17, 1996); *see also Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 673 F. Supp. 2d 313, 317 n.1 (D.N.J. 2009) ("Employers will often enter master agreements with [labor] councils . . . to mitigate the effect of jurisdictional disputes among unions on the progress of construction projects."). Indeed, the entire purpose of these

---

[8] Although the PLA states that the "Agreement shall not become effective unless executed by the [Council], the Local Unions, and Project Contractor," the remainder of the document and the signature page make it clear that the PLA was intended to be effective once the Council and the Project Contractor signed.

collective agreements is to provide for a comprehensive and standardized mechanism for the resolution of work disputes—a place where arbitration is highly favored.[9]

It is also clear that IBEW 351 considered itself bound by the PLA—in February 2013, IBEW 351 sent a letter to the Council purporting to withdraw from the PLA:

> Please accept this correspondence as formal notice that IBEW Local Union 351 is withdrawing from the Project Labor Agreement at West Deptford Energy Station due to the lack of compliance with the Project Labor Agreement process. Specifically, the construction manager is taking work that was previously covered under the PLA and removing it from the electrical contractors' underground package and then awarding it to another contractor who is using laborers to install an electrical duct bank on a site covered by the PLA. This leads to the construction manager taking the stance that this work is no longer covered under the PLA.

(Dkt. No. 18, Watkins Decl., Exhibit F.)[10] This shows that IBEW 351 considered itself bound in

---

[9] The Arbitrator also addressed these issues in his Final Opinion and Award:

> In the opinion of this Arbitrator, the arguments presented by the Electrical Workers, specifically, that Local 351 is not signatory to, and have "withdrawn" from, the PLA, are without merit. While received with reserved reaction, neither position advanced by Local 351 has a foundation in contract or fact.
> 
>      \*    \*    \*
> 
> The language of the PLA is clear and unambiguous. The United Building Trades Council of Southern New Jersey is the named party to the PLA and, once approved by the Council and executed by Council President Kehoe on May 4, 2012, the Council, its affiliates and signatory local unions became bound to its terms and conditions of the PLA. There is no factual dispute that IBEW Local 351 is a member of the United Building Trades Council of Southern New Jersey.
> 
> Did the Council duly approve the PLA? Minutes of the March 22, 2012 United Building Trades Council of Southern New Jersey meeting demonstrate that "President Kehoe discussed the language for the West Deptford CoGen project. Tom Sparacio and seconded by Hal Batdorf to accept the PLA - all were in favor. President Kehoe signed the agreement on behalf of the organization." (See Minutes of 3/22/12 meeting, attached to the PLA). There is no provision that each local union be required to sign the PLA, individually. Nor was there a disclaimer that, by not signing the PLA, a local union member of the Council was not bound to the PLA.

(Dkt. No. 6-2 at 8.)

the first instance by the PLA.[11] *Cf. Seabury Const. Corp. v. Dist. Council of New York & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, 461 F. Supp. 2d 193, 198 (S.D.N.Y. 2006) (noting a party's intent to adopt an agreement may be evidenced by its conduct of complying with some of its terms). Moreover, the PLA is obviously intended to cover relationships other than those between its signatories. (*E.g.*, Dkt. No. 6-1 at Preamble, Art. 3 ("This Agreement shall apply to all on-site construction work"), Art. 4, Art. 10.) Under the PLA, IBEW 351 was bound to arbitrate its disputes.[12] Therefore, IUOE 825's motion to dismiss is granted.[13]

Because the Court grants IUOE 825's motion to dismiss, it need not address IBEW 351's cross motion for a preliminary injunction.[14]

---

[10] This letter is referred to and relied on in IBEW 351's Amended Complaint.

[11] IBEW 351 argues that this letter withdrew them from the PLA, but this issue of contract validity is one that IBEW 351 should have addressed at arbitration not with this Court. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) ("[T]he issue of the contract's validity is considered by the arbitrator in the first instance."); *see also New Jersey Bldg. Laborers' Statewide Ben. Funds v. Mark Const.*, Civ. No. 07-5934, 2008 WL 3833542, at *2 (D.N.J. Aug. 13, 2008) (finding that challenges based on contract termination needed to be addressed in the first instance by the arbitrator), *aff'd sub nom. New Jersey Bldg. Laborers Statewide Benefits Fund v. Am. Coring & Supply*, 341 F. App'x 816 (3d Cir. 2009).

[12] IBEW 351 cannot eschew the arbitration process and then come to this Court seeking a second bite at the apple. Not only is it contrary to the PLA in this case, but it would be inequitable for the Court to allow IBEW 351 to ignore its binding agreements to IUOE 825's detriment.

[13] The Amended Complaint contains two counts—both are premised on IBEW 351's argument that it is not bound by the PLA. Because this Court finds that IBEW 351 is bound by the PLA, both claims fail.

[14] Indeed, because IBEW 351 cannot show that it is likely to succeed on the merits due to the Court's finding that the PLA binds IBEW 351, its motion for a preliminary injunction would be denied even if the Court reached that issue. *Conestoga Wood Specialities Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, Civ. No. 13-1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013) ("[A]n 'injunction shall issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief.' In other words, '[a] plaintiff's

The West Deptford Energy Station project is a massive undertaking. The project involves the construction of a 700 megawatt natural gas plant located on 300 acres of land in West Deptford, New Jersey. Such a project costs millions of dollars, lasts years, and involves hundreds of workers and many unions. For precisely these reasons, work stoppages and interruptions are highly detrimental to such a project. Inter-union conflicts are classic disputes for the arbitration process so that projects can proceed without delays by one side or another running to court. This matter is no different, and nothing in the recent Supreme Court canon changes the fact that these types of labor disputes may properly be addressed by arbitration. Indeed, the success of such large infrastructure projects depend on this established, respected, and long-used process.

## IV. CONCLUSION & ORDER

For the reasons set forth above;

**IT IS** on this 21st day of October 2013,

**ORDERED** that Defendant's Motion to Dismiss [Dkt. No. 10] is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Cross Motion for a Preliminary Injunction [Dkt. No. 18] is **DENIED** as **MOOT**; and it is further

**ORDERED** that this matter is **CLOSED**.

        **/s/ Faith S. Hochberg**
        **Hon. Faith S. Hochberg, U.S.D.J.**

---

failure to establish any element in its favor renders a preliminary injunction inappropriate.'" (internal citations omitted)).